**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TAEBYUS SMITH** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **CIVIL ACTION NO.** __4:21-CV-515__ |
| | § | |
| **SEADRILL AMERICAS, INC. and** | § | |
| **HALLIBURTON COMPANY** | § | |
| *Defendants.* | § | |

## SEADRILL US GULF LLC'S NOTICE OF REMOVAL

Defendant, Seadrill US Gulf LLC, files this Notice of Removal of this civil action to the United States District Court for the Southern District of Texas—Houston Division and respectfully shows as follows:

### PENDING STATE COURT SUIT

1.      On October 23, 2020, Plaintiff, Taebyus Smith ("Plaintiff"), filed a civil action naming Seadrill Americas, Inc. ("SAI") and Halliburton Company ("Halliburton") as the defendants in Cause Number 2020-68432, *Taebyus Smith v. Seadrill Americas, Inc., et al.* in the 295th Judicial District Court of Harris County, Texas. Plaintiff subsequently filed his First Amended Petition and Request for Disclosure (the "Petition") on January 19, 2021, naming Seadrill US Gulf LLC ("Seadrill") as a defendant. Seadrill timely filed its Original Answer on February 15, 2021.

2.      Plaintiff's suit arises out of injuries Plaintiff allegedly sustained aboard the WEST CAPRICORN (the "Vessel"), a semi-submersible drilling rig operated by Seadrill, on or about November 24, 2019.[1] Specifically, Plaintiff alleges that he was "cleaning a reserve tank on the [V]essel" with a hose and was "thrown backwards" by "pressure build up within the hose" when

---

[1] *See* **Ex. B-4,** Plaintiff's First Amended Petition at ¶ 5.1.

1

he shut the hose off.[2] As a result, Plaintiff's Petition asserts Jones Act, unseaworthiness, maintenance and cure, and gross negligence causes of action against SAI, Seadrill, and Halliburton (collectively "Defendants").[3]

3.     Plaintiff alleges that jurisdiction is proper in Harris County district court pursuant to the Saving to Suitors clause, 28 U.S.C. § 1333, because Plaintiff filed a Jones Act claim against Defendants.[4] As such, Plaintiff claims that the case is not removable to federal court.[5] However, as shown below, Plaintiff is not a Jones Act seaman. Furthermore, Plaintiff's claims fall under the Outer Continental Shelf Lands Act (the "OSCLA"), which gives federal district courts original jurisdiction. *See* 43 U.S.C. § 1349(b)(1) and 43 U.S.C. § 1333(a)(1)-(2).  Accordingly, Plaintiff's claims are removable under 28 U.S.C § 1441(a).

## TIMING OF REMOVAL

4.     On January 19, 2021, Plaintiff filed his First Amended Petition, which named Seadrill as a defendant. Seadrill's counsel of record accepted service on behalf of Seadrill on January 22, 2021.[6] Thus, pursuant to 28 U.S.C. 1446(b)(1), this Notice of Removal is timely because it was filed within 30 days of service upon Seadrill.

## REMOVAL JURISIDICTION

5.     A defendant has the right to remove a case to federal court when federal jurisdiction exists and when the removal procedure is properly followed. *See* 28 U.S.C. § 1441. Removal of this case is permitted because Plaintiff's Jones Act claim was improperly pled. Additionally, under 28 U.S.C. § 1441(a), any state court civil action over which a federal court would have original

---

[2] *Id.* at ¶ 5.3.
[3] *Id.* at ¶¶ 6.1–9.1.
[4] *Id.* at ¶ 3.1.
[5] *Id.* at ¶ 3.2.
[6] **Ex. A-3**, Seadrill US Gulf, LLC's Acceptance of Service of Process.

2

jurisdiction may be removed from state to federal court. *See* 28 U.S.C. § 1441(a). Removal of this case is, therefore, proper pursuant to 28 U.S.C. § 1441(a) because Plaintiff's claims fall under the OSCLA, which confers original jurisdiction upon this Court.

**A.     Removal Is Permitted Because Plaintiff Is Not a Jones Act Seaman**

6.     When a plaintiff sues under the Jones Act, the defendant generally cannot remove. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115 (2013). If a Jones Act claim is improperly or "fraudulently" pled, however, the case is removeable. *Id.* A district court may use a "summary judgment-like procedure" to determine whether a Jones Act claim was fraudulently pled. *Id.* "The fact that Jones Act claims are ordinarily not removeable does not prevent this inquiry." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993). Rather, "defendants are permitted to demonstrate that parties—or claims—are baseless in law and fact and serve only to frustrate federal jurisdiction." *Id.* To remove based on improperly pled claims, "[t]he removing party must show that there is no possibility that [the] plaintiff would be able to establish a cause of action." *Id.* at 207.

7.     To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). "Under the Jones Act, a 'seaman' is a term of art for an employee whose duties 'contribut[e] to the function of the vessel or to the accomplishment of its mission' and who has 'a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). This two-part test distinguishes "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *In re Endeavor Marine Inc*, 234 F.3d 287, 290 (5th Cir. 2000) (quoting *Chandris*, 515 U.S. at 368).

3

8.     Plaintiffs bear the burden of proof for establishing seamen status. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003). To satisfy the first element, a claimant must show that he "do[es] the ship's work." *Chandris*, 515 U.S. at 369. The second element, however, does not look to the employee's particular job but to "the employee's connection to a vessel." *McDermott Int'l Inc. v. Wilander*, 498 U.S. 337, 354 (1991). A seaman must have an employment-related connection to a vessel in navigation that is substantial in both duration and nature. *See Chandris*, 515 U.S. at 371.

**1.     Plaintiff is not a seaman under the Jones Act because he does not have an employment connection with the Vessel that is substantial in nature.**

9.     The overarching purpose of the Jones Act, as declared in *McDermott Intern., Inc. v. Wilander*, is to confine Jones Act and other seaman's remedies "to the members of the crew of a vessel plying in navigable waters," with shoreside workers to receive "only such rights to compensation at are given by the [LHWCA]." 498 U.S. at 347. Thus, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997).

10.     An worker's connection with a vessel is not substantial in nature if he is merely a temporary visitor and not a permanently assigned crew member, for Congress never intended workers with a transient and sporadic relationship to be entitled to Jones Act relief. *See Gardner v. Fieldwood Energy LLC*, No. H-18-0841, 2019 U.S. Dist. LEXIS 28649, **7, 13 (S.D. Tex. Jan. 30, 2019) (mem. op.). Indeed, the employees of contractors who perform transient work on a drilling vessel between voyages are not seamen as a matter of law. *See, e.g., Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001); *Ardleigh v. Schlumberger Ltd.*, 832 F.2d 933 (5th Cir. 1987); *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987); *Langston v. Schlumberger*

4

*Offshore Servs., Inc.*, 809 F.2d 1192 (5th Cir. 1987).

11.  Plaintiff is a transient, third-party contractor who has no connection to the Vessel that is substantial in nature to afford him Jones Act relief. At the time of the incident, Plaintiff was an employee of Tri-State Environmental, LLC ("Tri-State"). Tri-State employees, including Plaintiff, are employees of a third-party contractor who travel to the location identified by Tri-State's client, perform the services requested, and depart from the location when the service is completed.[7] Tri-State employees are not permanently assigned to any platform, vessel, or offshore work location.[8] Instead, they are assigned on a job-to-job basis based on availability and, in some cases, customer request.[9]

12.  In late 2019, Deep Gulf Energy II, LLC ("Deep Gulf")—an oil and as operator— requested that Tri-State perform environmental cleaning services aboard the Vessel.[10] Tri-State tasked Plaintiff to perform this service, and Plaintiff arrived to the Vessel on or around November 20, 2019.[11] After this task was to be completed, the Tri-State employees were to return shoreside.[12] The Tri-State employees were not permanently assigned to the Vessel but were sent temporarily aboard to perform the temporary work for Deep Gulf, Tri-State's customer.[13] Accordingly, Plaintiff is a transient, land-based worker who does not have a substantial connection to the Vessel that is substantial in nature. Plaintiff is, therefore, not a Jones Act seaman, and Seadrill is not prevented from removing the above-referenced case to this Court.

---

[7] *See* **Exhibit F**, Declaration of Ryan Gisclair, at ¶ 3.
[8] *Id.*
[9] *Id.*
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶ 9.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.

PD.31095975.1

**2.**      **Plaintiff is not a seaman under the Jones Act because he does not have an employment connection with any vessel or fleet of vessels that is substantial in duration.**

13.      The Supreme Court has accepted as guidance the Fifth Circuit's test that "a worker who spends less than about 30 percent of his time should not qualify as a seaman under the Jones Act." *See Chandris*, 515 U.S. at 371; *see also Roberts*, 266 F.3d at 375 ("We have left no doubt that the 30 percent threshold for determining substantial temporal connection must be applied, regardless of whether one vessel or several are at issue."). Indeed, "to be a seaman, [plaintiff] must show that he actually worked on a vessel [or fleet of vessels] *at least* 30% of the time." *Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015) (emphasis added). "In deciding whether there is an identifiable group of vessels of relevance for a Jones Act seaman-status determination, the question is whether the vessels are subject to common ownership or control." *Papai*, 520 U.S. at 556–557.

14.      There is no possibility that Plaintiff can establish a Jones Act cause of action against any defendant because there is no possibility that Plaintiff qualifies as a Jones Act seaman. Tri-State maintained detailed records regarding Plaintiff's work history, including the dates Plaintiff worked, the location where Plaintiff worked, the name of the specific rig, ship, or platform Plaintiff worked on, the number of days Plaintiff worked, and the type of location where Plaintiff was assigned.[14] The spreadsheet provided by Plaintiff's employer shows that Plaintiff worked less than 30% of the time on any particular vessel or fleet of vessels under common ownership or control:[15]

---

[14] *See* **Ex. F** at ¶ 5; *see also* **Ex. F-1**.
[15] *See* **Ex. F-1**.

| Smith Work | | | |
|---|---|---|---|
| **Operator** | **Work Days** | **Vessel Days** | **% of Total Time** |
| Atwood | 13 | 13 | 2.59% |
| Transocean | 118 | 118 | 23.51% |
| Nabors | 9 | 9 | 1.79% |
| Seadrill | 70 | 70 | 13.94% |
| Ensco | 7 | 7 | 1.39% |
| Diamond Offshore | 77 | 77 | 15.34% |
| Helix | 4 | 4 | 0.80% |
| Noble | 135 | 135 | 26.89% |
| Maersk | 23 | 23 | 4.58% |
| Pacific Drilling | 13 | 13 | 2.59% |
| Non-Vessel | 33 | 0 | 6.57% |
| **Total** | 502 | 469 | 100% |

As such, Plaintiff is not a Jones Act seaman. *See Roberts*, 266 F.3d at 377 (worker spent approximately 28% of his time assigned to a fleet of vessels by a common owner and was not a Jones Act seaman); *Moore v. Universal Sodexho U.S.*, No. H-08-3633, 2010 U.S. Dist. LEXIS 161404 (S.D. Tex. Jan. 2, 2010) (worker spent only 24% of his time on any one vessel and was not a seaman); *Skinner v. Schlumberger Tech. Corp.*, No. 13-3146, 2014 U.S. Dist. LEXIS 24685 (W.D. La. Feb. 25, 2014), *aff'd* 655 Fed. App. 188 (5th Cir. 2016) (worker who spent 19% of time on one vessel and 22% of time on fleet of vessels did not meet the substantial connection requirement); *Washington v. Blanchard Contrs., Inc.*, No. H-08-1806, 2009 U.S. Dist. LEXIS 34749 (S.D. Tex. April 24, 2009) (Lake, J.) (worker who spent 16% of time on vessel did not have substantial connection). Accordingly, because Plaintiff does not meet the duration element of the seaman status test, Seadrill is not prohibited from removing Plaintiff's case to federal court.

**B.    Defendants are Not Plaintiff's Borrowing Employers**

15.    Plaintiff is also not entitled to relief under the Jones Act because Defendants are not Plaintiff's borrowing employers. The Jones Act only confers upon a seaman the right to sue his employer for negligence resulting in his personal injury. *See* 46 U.S.C. § 30104 (emphasis

7

added). Thus, the Jones Act is applicable only if an employment relationship exists. *See id.*

16.     The borrowed employee doctrine is the "functional rule that places the risk of a worker's injury on his actual rather than his nominal employer." *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir. 1981). When deciding whether a person qualifies as a borrowed employee, courts should consider the following factors:

>   a.   Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
>   b.   Whose work is being performed?
>
>   c.   Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
>   d.   Did the employee acquiesce in the new work situation?
>
>   e.   Did the original employer terminate his relationship with the employee?
>
>   f.   Who furnished the tools and place for performance?
>
>   g.   Was the new employment over a considerable length of time?
>
>   h.   Who had the right to discharge the employee?
>
>   i.   Who had the obligation to pay the employee?

*Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)). "No single factor, or combination of them, is determinative[,]" but the Fifth Circuit has considered control to be the central factor. *Id.* (citing *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988)).

17.     All of the factors weigh against *any* Defendant being Plaintiff's borrowing employer. Specifically, Plaintiff was supervised by Timothy Herrin, a Tri-State employee, who served as the Superintendent of the Tri-State crew working aboard the Vessel.[16] Mr. Herrin had

---

[16] *See* **Ex. F** at ¶ 12(i).

overall direction of the Tri-State employees' work and a Tri-State crew foreman would have oversight over the operative details for each Tri-State work crew.[17] Thus, Tri-State had ultimate control over Plaintiff's actions—not the defendants.

18.     Furthermore, Tri-State was performing work for Deep Gulf—not the defendants.[18] There was a meeting of the minds between Tri-State and Deep Gulf regarding Tri-State's work. Specifically, the MSA between Deep Gulf and Tri-State states that the work performed by Tri-State will be that of an independent contractor.[19] Tri-State did not, and does not, have a contract with any defendant in the lawsuit for work performed by Plaintiff on the Vessel.[20]

19.     Moreover, Tri-State employed Plaintiff for the duration of his time aboard the Vessel and was the sole entity who had the right to discharge Plaintiff from his employment with Tri-State.[21] Tri-State provided its own equipment for the work Plaintiff performed on the Vessel, and Plaintiff did not need to use any of Defendants' tools or equipment to complete the task Tri-State employees were hired to perform on the Vessel.[22] As such, Tri-State was Plaintiff's employer at the time of the incident, and none of the Defendants served as Plaintiff's borrowing employer during the time Plaintiff performed work aboard the Vessel.

## C.     Removal Is Proper Because Plaintiff's Claims Arise Under the OSCLA

20.     Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), this Court has original jurisdiction over "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . .". 43 U.S.C.

---

[17] *Id.*
[18] *Id.* at ¶ 12(ii).
[19] *Id.* at ¶ 12(iii).
[20] *Id.*
[21] *Id.* at ¶ 12(v), (viii).
[22] *Id.* at ¶ 12(vi).

PD.31095975.1

§ 1349(b)(1); *see also* 43 U.S.C. § 1333(a)(1)-(2). Indeed, "OCSLA *explicitly provides* that district courts have federal question jurisdiction over claims occurring on the Outer Continental Shelf." *Barker*, 713 F.3d at 220 (emphasis in original) (citing 43 U.S.C. § 1333(a)(1)).

21.     The OCSLA jurisdictional grant is liberally interpreted and "covers not only cases arising geographically on the OCS but also over cases arising 'in connection with' operations thereon." *Sam v. Laborde Marine, L.L.C.*, No. H-19-4041, 2020 WL 59633, at *2 (S.D. Tex. 2020) (Lake, J.) (quoting 43 U.S.C. § 1349(b)(1)); *see also In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 401 (2014). The Fifth Circuit applies "a but-for test" for determining the existence of OCSLA jurisdiction, asking "whether: (1) the activities that caused the injury constituted an 'operation' 'conducted on the Outer Continental Shelf that involved the exploration and production of minerals', and (2) the case 'arises out of, or in connection with' the operation." *In re Deepwater Horizon*, 745 F.3d at 163.  Both of these requirements for jurisdiction under OCSLA are satisfied here.

     **1.     The activities that allegedly caused Plaintiff's injury furthered the exploration and production of minerals on the OCS.**

22.     Plaintiff alleges he was injured while performing duties in service of the Vessel.[23] On the date of the incident, the Vessel was involved in oil and gas drilling operations on the outer Continental Shelf ("OCS").[24] These operations included tripping in hole with an EZSV isolation packer, planning for setting the EZSV isolation packer, performing a cement job, and then being ready to pull out of hole.[25]

23.     The Vessel was located above the OCS at Garden Banks Block 492 off the coast of Louisiana at the following coordinates: 27º27'41" N, 93º34'7" W.[26] Specifically, the Vessel was

---

[23] *See* **Ex. B-4** at ¶ 5.3.
[24] *See* **Exhibit G**, Declaration of Steve Morall,  at ¶ 5.
[25] *Id.*
[26] *See* Exhibit G, Declaration of Steve Morall, at ¶ 4.

10

directly connected to the OCS seabed by a drill pipe/riser connected to a blowout preventer positioned on the OCS sea floor.[27] The Vessel was, therefore, geographically located on the OCS and was engaged in operations involving exploration and production of minerals on the OCS. *See Clay v. ENSCO Offshore CO.*, No. 14-2508, 2015 U.S. Dist. LEXIS 155902, at *1–2 (E.D. La. 2015) (holding that a semi-submersible drilling rig similar to the WEST CAPRICORN, when connected and attached to the OCS through its drilling mechanisms and is performing exploration and production of mineral resources, is "erected" on the OCS for the purposes of Section 1333(a)(1)); *see also United States v. Kaluza*, No. 12-265, 2013 U.S. Dist. LEXIS 173134, at *28 (E.D. La 2013) (holding same); H.R. Rep. No. 95-590, at 128 (1977) (stating that the OCSLA is to be applicable to "activities on *drilling ships, semi-submersible drilling rigs, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances*, on the OCS for exploration, development, and production.") (emphasis added).

24.     Furthermore, Tri-State, Plaintiff's employer, is an environmental services contractor whose business involves providing equipment and services to the oil and gas industry.[28] Tri-State was hired to perform environmental cleaning services aboard the Vessel.[29] Plaintiff claims that he was injured while "cleaning a reserve tank on the vessel", a duty he alleges he was performing "in the service of the Vessel[.]"[30] Accordingly, Plaintiff was allegedly injured while performing an activity in furtherance of mineral development on the OCS. *See Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 350 (5th Cir.1999).

**2.      Plaintiff's claims clearly arise out of operations conducted on the OCS.**

25.     Plaintiff's alleged injury would not have occurred but for oil and gas drilling

---

[27] *Id.* at ¶ 6.
[28] See Ex. F at ¶ 3.
[29] *Id.* at ¶ 8.
[30] *See* the Petition at ¶ 5.3.

operations on the Vessel and for the need of his employer's environmental cleaning services, which assisted in the exploration and production of oil and gas on the OCS. Indeed, if Plaintiff had not been assigned to work on the Vessel, then he would never have been required to clean a reserve tank on the Vessel—the task in which he was allegedly injured. *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208, 213 (5thCir. 2013) ("[I]t is clear that but for his employment, Barker would not have been involved in the incident forming the basis of this suit."); *Hubbard v. Laborde Marine LLC*, 2014 WL 12776414 (E.D. La. 2014) ("Plaintiff would not have been aboard the M/V RIG RUNNER but-for the extraction of minerals from the OCS. Accordingly, his injuries are sufficiently related to the operations on the OCS for this Court to exercise jurisdiction"). As such, OCSLA jurisdiction exists over this case based on the two-part test applied in the Fifth Circuit, and the case is properly removable on that basis.

## PROCEDURAL REQUIREMENTS ARE SATISFIED

26.     Pursuant to 28 U.S.C. § 1446(d), Seadrill is simultaneously filing written notice of this removal with the Clerk of Court for Harris County, Texas, the district where the state court action is currently pending. Seadrill will also give Plaintiff prompt written notice of this Notice of Removal by serving copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, upon Plaintiff's counsel.

27.     Additionally, the United States District Court for the Southern District of Texas—Houston Division includes the county in which the state court action is now pending. This Court is, therefore, a proper venue for removal of this action pursuant to 28 U.S.C. §§ 124(c)(6) and 1441(a).

28.     Furthermore, pursuant to Local Rule 81 for the Southern District of Texas, Seadrill attaches the following indexed documents to this removal:

12

a. Exhibit A – All executed process in this case[31]:

    i. A-1 – Seadrill US Gulf LLC's Acceptance of Service of Process;

b. Exhibit B – All pleadings that assert causes of action and all answers to such pleadings:

    i. B-1 – Plaintiff's Original Petition and Request for Disclosure;

    ii. B-2 – Halliburton Company's Special Exceptions, Original Answer to Plaintiff's Original Petition, and Request for Disclosure;

    iii. B-3 – Seadrill Americas, Inc.'s Original Answer to Plaintiff's Original Petition and Request for Disclosure;

    iv. B-4 – Plaintiff's First Amended Petition and Requests for Disclosure; and

    v. B-5 – Seadrill US Gulf LLC's Original Answer to Plaintiff's First Amended Petition and Requests for Disclosure;

c. Exhibit C – the Scheduling and Docket Control Order;

d. Exhibit D – the state court docket sheet from Cause No. 2020-68432, *Taebyus Smith v. Seadrill Americas, Inc., et al.* in the 295th Judicial District Court of Harris County, Texas;

e. Exhibit E – a list of all counsel of record, including addresses, telephone numbers, and parties represented;

f. Exhibit F – Declaration of Ryan Gisclair, including:

    i. Exhibit F-1 – Spreadsheet of Plaintiff's Work History;

g. Exhibit G – Declaration of Steve Morall; and

h. Exhibit H – Halliburton's Consent to Removal.

29.    The name and address of the court from which the case is being removed is:

    295th Judicial District Court of Harris County, Texas
    201 Caroline, 14th Floor
    Houston, Texas 77002

---

[31] No returns of service to Defendants are on file with the Harris County District Clerk.

PD.31095975.1

## DEFENDANTS' CONSENT TO REMOVAL

30.    The undersigned counsel for Seadrill conferred with counsel for Halliburton Company regarding the filing of this Notice of Removal. Counsel for Halliburton Company expressly consents to the removal of the pending state court action to this Court.[32] SAI also consents to removal.

## CONCLUSION AND PRAYER

For the foregoing reasons, Seadrill US Gulf LLC respectfully asks this Court to accept this Notice of Removal as good and sufficient, remove the above-described action from the District Court of Harris County, Texas to the United States District Court for the Southern District of Texas—Houston Division for trial and determination as provided by law, take jurisdiction of this action to its conclusion or final judgment to the exclusion of any further proceedings in the state court, and grant Seadrill US Gulf LLC such other and further relief, in law or in equity, to which it may be justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/Michael E. Streich*
Michael E. Streich
(Attorney-In-Charge)
Texas Bar No. 24079408
Fed ID No. 1339959
Stormy Strickland
Texas Bar No. 24117159
Fed ID No. 3565005
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 626-1386
Facsimile: (713) 626-1388
Email: michael.streich@phelps.com
stormy.strickland@phelps.com
**Attorneys for Seadrill Americas, Inc.
and Seadrill US Gulf LLC**

---

[32] Exhibit H, Halliburton's Consent to Removal.